IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW W. HOUTZ<br>125 West Davis Street<br>Tiffin, Ohio 44883 | ) <br>) <br>) <br>) | CASE NO. 1:26-CV-1022 |
| Plaintiff | ) <br>) | |
| v. | ) <br>) | JUDGE |
| CITY OF SHAKER HEIGHTS<br>3400 Lee Road<br>Shaker Heights, Ohio 44120 | ) <br>) <br>) | **COMPLAINT** |
| and | ) <br>) | (1) UNLAWFUL ARREST<br>UNDER 42 USC 1983 |
| KEVIN KRAKORA<br>c/o City of Shaker Heights Police Department<br>3355 Lee Road<br>Shaker Heights, Ohio 44120 | ) <br>) <br>) <br>) | (2) FALSE IMPRISONMENT<br><br>(3) UNLAWFUL RESTRAINT |
| in his individual and official capacity | ) <br>) | (4) MALICIOUS PROSECUTION |
| and | ) <br>) | (5) INTENTIONAL INFLICTION<br>OF EMOTIONAL DISTRESS |
| RAYMOND DOUGLAS<br>c/o City of Shaker Heights Police Department<br>3355 Lee Road<br>Shaker Heights, Ohio 44120 | ) <br>) <br>) <br>) | |
| in his individual and official capacity | ) <br>) | **JURY DEMAND** |
| and | ) <br>) | |
| MARKREDELL CAMPBELL<br>c/o City of Shaker Heights Police Department<br>3355 Lee Road<br>Shaker Heights, Ohio 44120 | ) <br>) <br>) <br>) | |
| in his individual and official capacity | ) <br>) | |
| and | ) <br>) | |

ROBERT KERR                                                    )
c/o City of Shaker Heights Police Department   )
3355 Lee Road                                                  )
Shaker Heights, Ohio 44120                              )
                                                                         )
in his individual and official capacity                 )
                                                                         )
                  and                                              )
                                                                         )
CHRISTINE M. HOUTZ                                     )
2913 Huntington Road                                      )
Shaker Heights, Ohio 44120                             )
                                                                         )
                  Defendants                                   )


Plaintiff, Matthew W. Houtz, by and through undersigned counsel, hereby alleges the following:

## I.  PARTIES

1. Plaintiff is citizen of the United States and resides in Tiffin, Ohio.

2. Defendant City of Shaker Heights is an Ohio municipal corporation that operates the Shaker Heights Police Department. The City is responsible for the policies and practices of the City and Police Department as well as training its police officers.

3. Defendant Kevin Krakora is a Patrolman for the Shaker Heights Police Department at all relevant times in this Complaint. At all relevant times herein, Krakora acted as an employee of the City of Shaker Heights Police Department in connection with a governmental or proprietary function and under the color of law.

4. Defendant Raymond Douglas is a Patrolman for the Shaker Heights Police Department at all relevant times in this Complaint. At all relevant times herein, Douglas acted as an employee

2

of the City of Shaker Heights Police Department in connection with a governmental or proprietary function and under the color of law.

5.   Defendant Markredell Campbell is a Patrolman for the Shaker Heights Police Department at all relevant times in this Complaint. At all relevant times herein, Campbell acted as an employee of the City of Shaker Heights Police Department in connection with a governmental or proprietary function and under the color of law.

6.   Defendant Robert Kerr is a Sergeant for the Shaker Heights Police Department at all relevant times in this Complaint. At all relevant times herein, Kerr acted as an employee of the City of Shaker Heights Police Department in connection with a governmental or proprietary function and under the color of law.

7.   Defendant Christine M. Houtz is the ex-wife of Matthew Houtz and resides in Shaker Heights, Ohio.

## II.  JURISDICTION AND VENUE

8.   This Court has original jurisdiction over claims brought under 42 USC 1983 pursuant to 28 USC 1331, 1343(a)(3)-(4).

9.   This Court has supplemental jurisdiction over claims brought under Ohio state law under 28 USC 1367.

10. Venue is appropriate under 28 USC 1391(b).

## III. FACTS

11. Plaintiff Matthew Houtz and Defendant Christine Houtz (hereinafter "Christine") married on September 22, 2001. They have eight children together. The oldest was born in 2004 and the

youngest in 2021. At all relevant times, they resided at 2913 Huntington Road, Shaker Heights, Ohio 44120 (hereinafter "marital residence").

12. In May 2024, Plaintiff, a former police officer, started working night shifts for Heidelburg Distributing at a warehouse in Independence. He usually worked from about 6:30 PM to about 7:00 AM five nights a week. He would sleep intermittently during the day, but also tried spend time with his children.

13. In spring and summer 2024, Christine increasingly started arguments with Plaintiff, which became heated between them, especially as Plaintiff defended himself. Christine would then tell the children that Plaintiff was "dangerous" and cite that a reason to take them out of the house during the daytimes and away from Plaintiff. As a result, despite Plaintiff being home from work during the day, he was not able to spend quality time with his children. Even on weekends, when Plaintiff tried to spend time with his children and take them places, Christine would surprise Plaintiff with plans, not previously disclosed to him, in which she would take the children elsewhere. She encouraged their older children to get involved in her marital disputes with Plaintiff and partake in keeping Plaintiff from spending time with the younger children.

14. Shortly before Father's Day in 2024, Christine told Plaintiff she wanted a divorce. During the summer of 2024, Christine called the police multiple times in an effort to have Plaintiff arrested and charged, but was not successful.

15. On September 2, 2024, Plaintiff was hoping to spend time with the three youngest children at a nearby playground after he promised them days earlier. The older children tried to convince the younger children to not go with Plaintiff, but instead go with them and Christine to a campground. The two youngest children still decided to go with Plaintiff, prompting one of the

older children, Augustus, now an adult, to ride and video record them. Christine and the other children, except the oldest, then followed Plaintiff to the playground in a separate vehicle.

16. On the way to the playground, Plaintiff stopped at the Shaker Heights police station. Christine followed him there too. Plaintiff sought help from the police to tell Augustus that he should not be video recording Plaintiff while Plaintiff is driving. Two officers came to the parking lot. They gave Christine pamphlets while refusing to help Plaintiff in any way.

17. Plaintiff went back in the car to take the younger children to the playground. As he did so, Augustus stood between open front passenger door and the vehicle with his arm on the roof to prevent Plaintiff from functionally leaving. Plaintiff appealed to the officers for help. One of them said he could not get involved and refused to remove Augustus from being an obstruction to Plaintiff leaving. Plaintiff asked what would happen if he were to just drive away. The officer responded that if Augustus were be injured in any way, the officer would arrest Plaintiff. Plaintiff then asked if he could shove Augustus out of the obstructive position. The officer responded that Plaintiff would be arrested for assault. Plaintiff asked the officer if Plaintiff had any rights. The officer did not respond.

18. Eventually, Augustus went into the car. Plaintiff went to the playground. Christine followed. Throughout the time at the playground, Christine and the older children regularly interfered with Plaintiff's ability to spend quality time with his younger children.

19. On September 4, 2024, Christine filed a complaint for divorce against Plaintiff in *Houtz v. Houtz*, Cuyahoga County Case No. DR-24-401215. She did not file a motion for temporary orders in regards to custody of the children. No such temporary orders were imposed by the court. No such orders existed on October 17, 2024. Plaintiff and Christine continued to reside together at the marital residence with their eight children into October 17, 2024.

5

20. Days before October 17, 2024, Christine asked Plaintiff if he was willing to meet her boyfriend. Plaintiff declined.

21. In the late morning of October 17, 2024, Plaintiff arrived home after work and a doctor appointment. He told Christine that to accommodate his work schedule, his mother would have to become more involved with the children. Christine was not happy about this and an argument ensued. Their oldest child, Clark, got involved in the discussion and sided with Christine. Clark then engaged in an argument with Plaintiff, which Clark raised his voice. Plaintiff defended himself. Meanwhile, Christine was holding the youngest child while video recording snippets of the conversation between Clark and Plaintiff. The only time that any of Christine's recordings show Plaintiff is for a few seconds of him sitting in a chair. In one recording, Christine is heard accusing Plaintiff of "throwing" a chair, but the video does not visually show that or any such aftermath. In truth, Plaintiff just slid an out-of-place chair to its appropriate place. The sound on the video reflects that.

22. Christine then stated she was taking the youngest child with her and Clark on errands. Plaintiff, frustrated after months of his time with his children being chipped away, told Christine no.

23. As morning became afternoon, Christine, Clark, and the youngest child went into the car. Plaintiff, based on what the Shaker Heights police officer advised him in the police station parking lot on September 2, 2024 as referenced earlier, figured he would be allowed to stand behind the car to prevent Christine from leaving with the youngest child. He did not use force, act violently, nor threaten any violence or use of force. Plaintiff stood behind the car.

24. Christine called 911. She stated she was in the driveway and that her estranged husband would not allow her to leave. She said he was standing behind the car. She then said that he

6

moved out of the way, which was not true. She then told the dispatcher to hold while she was going to back out. After a thud is heard, Christine screamed, telling the dispatcher that Plaintiff was laying down under the car.

25. In truth, as confirmed by Plaintiff's video recording with his phone, Plaintiff was not laying down and never laid down. He was standing the entire time. Christine outright hit him with the car. Meanwhile, she frantically screamed for help to the dispatcher for police to come as soon as possible. She claimed that Plaintiff was "terrifying" her. She continued to state that Plaintiff was laying down behind the car, which was not true. She also claimed that Plaintiff was having a "psychiatric emergency" and needed an ambulance.

26. Shortly thereafter, Defendant Krakora arrived. As Krakora walked up the driveway, Plaintiff was sitting on the trunk of the car. Krakora asked Plaintiff what was going on. Plaintiff stated that Christine was trying to take his child away and that he learned from the aforementioned incident in Paragraph 17 that he does not have to move. Krakora told Plaintiff he could not stop people from moving freely. Plaintiff denied he was doing so and again referenced the aforementioned incident in Paragraph 17. Krakora told Plaintiff he was stopping Christine, Clark, and the youngest child from moving freely. Plaintiff replied that they could get out of the car. Krakora asked Plaintiff what his goal was. Plaintiff replied that he did not want his youngest child to be taken away.

27. Krakora walked up to the driver's door and inquired with Christine. Meanwhile, Defendant Douglas had arrived. As Christine began to tell Krakora her version of the events, Plaintiff got off the trunk and stood on the driveway behind the car to talk to Douglas. Shortly after this, Defendant Campbell arrived to assist.

7

28. Christine told Krakora that Plaintiff was laying under the car, even though that was not true. Christine confirmed that she and Plaintiff were in process of getting divorced, but both were living at the house. After Christine confirmed that she and Plaintiff both own the house, Krakora asked Christine if she could leave the youngest child with Plaintiff. Christine adamantly said no. She said that Plaintiff was "terrifying" and would show Krakora videos of what just happened. Krakora asked if there was "anything physical," which Christine denied.

29. Meanwhile, Plaintiff explained to Douglas the incident referenced in Paragraph 17 and how he was merely doing the same thing Clark did. Plaintiff offered to show Douglas the video he just recorded of Christine attempting to run him over, but Douglas did not respond. Plaintiff stressed that he was not trying to pick a fight, but rather keep Christine and Clark from taking his youngest son away.

30. Christine told Krakora that Plaintiff was supposed to be sleeping during the day because of his work schedule at night.  Christine showed Krakora one of the videos she recorded on her phone. It visually showed the youngest child while Christine was narrating her perception of the events. In the video, Christine blandly told Plaintiff, "Please don't do that, you're scaring him." While Krakora was watching the video, Chrstine told Krakora that Plaintiff threw a chair across the room even though the video did not demonstrate that visually or audibly.

31. Krakora asked Christine if she could take the van that was also parked on the driveway. She said no. Krakora said he was trying figure out a resolution until the divorce is done. Christine said, "this is how [Plaintiff] has been since this summer." Krakora then turned to Douglas, who had just walked over, and said, "unlawful restraint?" Christine reiterated in a more emphatic tone that Plaintiff was laying under the car, even though that was not true.

32. Christine told Krakora and Douglas that she did not know what to do and had nowhere to go if she were to not live at the marital residence. Krakora asked Christine if she wanted to prosecute Plaintiff for stopping her from leaving. She replied she would do whatever she had to do "to make this stop." She said Plaintiff cannot stay at the marital residence any longer. She told Krakora and Douglas that Plaintiff treats the children "like property" but without specific facts. She said that Plaintiff had been "screaming" since he returned home from work and that he was "talking batshit crazy," but did not cite any specific facts.

33. Krakora asked Christine if "you guys would go for a walk and cool off." Krakora acknowledged that Plaintiff was not stopping Christine from leaving entirely. Christine then said that Plaintiff "terrifies" her, but did not cite specific facts.  She then commented on Plaintiff's relationship with their youngest child, age three, and alleged that Plaintiff was "manipulating" their six-year-old child. She did not allege a crime, but rather a parenting argument that was more appropriately suited for the domestic relations court to consider. Christine then said she did not know what to do and said so in a tone that begged Defendants Krakora and Douglas to do something for her.

34. Plaintiff reiterated that the three-year-old child could simply stay at the house with him. Christine then said Plaintiff had not slept in 24 hours and then upped that number to 48 hours.

35. Krakora began researching the crime of unlawful restraint on his phone. Christine reiterated her lie that Plaintiff was laying under the car and how that "is not a sane person thing to do." Krakora then asked Christine if she was willing to prosecute Plaintiff for unlawful restraint. Christine asked what would happen. Krakora said Plaintiff would go to jail and that Christine could obtain a protection order. Christine reacted, "Yes! Yeah. Yeah."

36. Krakora walked toward Plaintiff standing at the trunk. Plaintiff asked Krakora if he was going to get a restraining order. Plaintiff emphasized there was no basis to do so. Plaintiff truthfully stated that he had not threatened Christine.

37. Krakora asked Plaintiff if he was going to "let them go or not." Plaintiff, standing behind the trunk, said no. Plaintiff asked, "Why would I do that?" Krakora replied, "Because they are trying to run errands." Plaintiff asked, "Are they going to let me keep my son?" Krakora said no. Plaintiff asked, "Why should she get to keep him?" Krakora replied, "That's between you and her." Plaintiff told Krakora that Krakora was taking Christine's side. Plaintiff said that his son did not need to go on the trip. Krakora said that Christine wanted the child to go. Plaintiff replied that the child could stay home since he was "my son too." Krakora admitted that "it is none of my business."

38. Finally, Krakora told Plaintiff he could not stop Christine and the children from leaving. Plaintiff said he could. Douglas then told Plaintiff either he lets them leave or he goes to jail. Plaintiff asked, "What law am I breaking?" Krakora said unlawful restraint. Plaintiff said he had not restrained anyone. Krakora told Plaintiff that he was stopping Christine and the children from leaving. Plaintiff said, "I am stopping them from driving away with my son." Krakora said, "It is her son too."

39. Plaintiff then demanded to know the elements of unlawful restraint. Plaintiff asked for the Ohio Revised Code section number and told Krakora that he needed to have all the elements before he could make an arrest. Plaintiff looked up the law on his phone. He reiterated to Krakora that he was not restraining anyone. Krakora said, "You are. Are you going to move or no?" Plaintiff said, "This is not restraining." Plaintiff then turned around to talk to Christine. Plaintiff stayed at the trunk area. He started asking her if she was really going to have him

10

arrested. At that point, both Krakora and Douglas converged onto Plaintiff. Both grabbed him. Krakora held Plaintiff while Douglas placed handcuffs on him. Campbell assisted in the arrest by grabbing Plaintiff's other arm so Douglas could secure the handcuffs on Plaintiff's wrists.

40. At about the same time, Kerr arrived to assist, witnessing the arrest and escorting of Plaintiff to the patrol vehicle, but did nothing to intervene to stop the arrest. He had the authority to inquire of Krakora, Douglas, and Campbell about the merits of the arrest and order them to reverse their decision and action, but failed to do so.

41. Plaintiff was charged with one count of unlawful restraint under Shaker Heights Codified Ordinance 737.08 in *City of Shaker Heights v. Houtz*, Shaker Heights Municipal Court Case No. 24CRB00755. Krakora signed the probable cause affidavit.

42. Plaintiff spent the night at Solon city jail. The next morning, he appeared via video in Shaker Heights Municipal Court for an initial appearance and bond hearing.

43. Christine appeared at the hearing remotely. She demanded a protection order, again insinuating that Plaintiff was dangerous to her and their children. She falsely stated that Plaintiff's employment would not be jeopardized because he could work at Heidelberg in Tiffin. However, Heidelberg Distributing does not have a location in Tiffin. Rather, Tiffin is home to Heidelberg College, which is independent of and not the same as Heidelberg Distributing.

44. As a direct and proximate result of Defendant Officers' arrest and charging of Plaintiff and statements made by Christine, the Shaker Heights Municipal Court imposed a $250 bond and granted Christine a protective order as a condition of bond that prohibited Plaintiff from having any contact with Christine and all of their eight children. Plaintiff bonded out that day.

45. On the day Plaintiff was released from jail, Christine's boyfriend moved in with her and the children at the marital residence.

46. As a direct and proximate result of the protective order, Plaintiff could no longer reside at the marital residence. The only place he could stay and live was with his mother in Tiffin, Ohio, about a two-hour drive away. Plaintiff lost his job immediately because he could not make the two-hour commute. He was unemployed for about a month before obtaining a full-time job. However, he has only made about half the income he made from his previous job.

47. As a direct and proximate result of the protective order, Plaintiff could not have any parenting time with his children and could not obtain an order from the Cuyahoga County Domestic Relations Court granting him temporary parenting time during the pendency of the divorce.

48. On December 9, 2024, Plaintiff, through an attorney, motioned Shaker Heights Municipal Court to modify the bond conditions and protective order so Plaintiff could obtain an order from Cuyahoga County Domestic Relations Court granting him parenting time. There was no opposition from the Shaker Heights Prosecutor. The Shaker Heights Municipal Court finally granted Plaintiff's motion two months later on February 11, 2025.

49. On February 12, 2025, Plaintiff filed a motion in the divorce case for temporary parenting time. Christine opposed it, citing the unlawful restraint case and that Plaintiff was now living in Tiffin, which was a direct result of the unlawful restraint case.

50. On March 6, 2025, pursuant to an agreement between Plaintiff and Christine, the Cuyahoga County Domestic Relations Court granted Plaintiff parenting time, but only via FaceTime video calls twice a week. Half the time, Christine came up with excuses to not comply. Christine ensured the children were busy with other matters and activities so that Plaintiff did not have exclusive, undistracted time with the children.

51. On May 1, 2025, upon motion by the Shaker Heights Prosecutor citing insufficient admissible evidence to support a conviction and after a hearing, the Shaker Heights Municipal Court dismissed the unlawful restraint charge, thereby terminating the criminal prosecution.

52. On May 13, 2025, the divorce was set for trial. Despite the dismissal of the unlawful restraint charge, the reality of Plaintiff now being estranged from his children for several months could not be undone. In the best case scenario, the Domestic Relations Court was not likely to reunite Plaintiff and his children without first going through family therapy.

53. To avert a trial, Plaintiff and Christine settled the divorce case. They agreed to a shared parenting plan, which required enrolling seven of the children into three months family therapy with Plaintiff.  Upon successful completion, Plaintiff would receive actual parenting time in person. Plaintiff has successfully completed this therapy.

54. On October 30, 2025, Plaintiff submitted to the Domestic Relations Court proof of his compliance with therapy and adequate living arrangements to justify the next step of actual parenting time with the children. However, nothing has come of it. Christine, empowered by her success to convincing Defendant Officers and others in the justice system to believe her false statements about Plaintiff, has refused to comply with the agreed court order. Because of Christine's lack of cooperation, Plaintiff has not seen his children.

### IV. COUNT ONE – 42 USC 1983

55. Plaintiff incorporates Paragraphs 1-54 as if fully rewritten herein.

56. Defendants Krakora, Douglas, Campbell, and Kerr are hereby collectively referred to as "Defendant Officers."

57. Plaintiff and his then-wife were married and living in the same household. Even though a divorce action had been filed, there were no court orders governing the children. The conflict and argument they had was verbal, nonviolent, and contained no threats of violence.

58. Police are supposed to stay out of conflicts that are appropriate for civil court, do not involve harm or threats of harm to anyone's safety, and do not involve the commission of a crime. A verbal argument between a married couple over their child fits these criteria. With proper training, police officers are supposed to recognize that making an arrest and charging a crime without probable cause is an unlawful and unconstitutional means to resolving a conflict between a married couple having a non-violent dispute.

59. Plaintiff and Christine had a non-violent dispute over whether their youngest child should leave the house to go with Christine. Plaintiff did not threaten or pose a risk to Christine's safety and personal well-being or that of any of their children. Plaintiff did not commit any criminal offense. Meanwhile, in reference to her perception of how Plaintiff treats the children, Christine made arguments to Defendants Krakora and Douglas that were for the domestic relations court to handle. She wanted them to use their police powers to act as the role of the domestic relations court. Defendants Officers should have known their boundaries of their powers as police officers and that of the domestic relations court. The City of Shaker Heights should have trained them as such.

60. Defendant Krakora was unsure what to do to diffuse the conflict between Plaintiff and Christine. He should have realized the limits of what he could do to help the situation. The City of Shaker Heights should have trained him as such. At worst, Plaintiff maybe committed disorderly conduct, which is a minor misdemeanor, not arrestable, and does not result in a bond and protective order. Instead, Krakora felt he had to do something more drastic. He went so far to

suggest and convince Christine that by moving forward with prosecution on unlawful restraint, she could obtain a protection order.

61. Defendants Krakora, Douglas, and Campbell had no probable cause to arrest Plaintiff and charge him with unlawful restraint, but did so anyway, under the color of law in violation of 42 USC 1983.

62. Defendant Kerr knew or should have known that the arrest of Plaintiff was without probable cause, thus unlawful and unconstitutional. He could have intervened to stop the arrest, but he failed to intervene.

63. As a direct and proximate result of Plaintiff's unlawful and unconstitutional arrest that directly led to a protective order that estranged Plaintiff from his children, Defendant Officers and City of Shaker Heights placed undue influence on Plaintiff's divorce case that reverberates and causes ongoing damage to this day. Plaintiff remains estranged from his children. The relationship with his children will likely never be fully repaired.

64. As a direct and proximate result of Plaintiff's unlawful and unconstitutional arrest that directly led to a protective order, Plaintiff was forced move out of his residence and with his mother in Tiffin, which is nearly two hours away. As a direct and proximate result, Plaintiff lost his employment with Heidelberg Distributing.

65. The City of Shaker Heights has a duty to provide proper training to its officers, including on the law, how to properly handle a non-violent argument between husband and wife that is a civil matter, and to not make arrests without probable cause. As evidenced by the Defendant Officers' conduct, the City of Shaker Heights failed to provide them such training. As a direct and proximate result of the lack of training, Plaintiff was subject to an unlawful and unconstitutional arrest. Therefore, the City of Shaker Heights should be liable for the Defendant

15

Officers' conduct that violates 42 USC 1983.

## V.  FALSE IMPRISONMENT

66. Plaintiff incorporates Paragraphs 1-65 as if fully rewritten herein.

67. Plaintiff did not commit unlawful restraint or any crime on October 17, 2024. There was no probable cause, thus no lawful privilege, to arrest him for unlawful restraint or any other crime.

68. By arresting Plaintiff without probable cause and making him spend a day and night in jail before he bonded out, Defendants Krakora, Douglas, and Campbell intentionally confined Plaintiff without lawful privilege and against his consent.

69. As a direct and proximate result of Plaintiff's confinement without lawful privilege and consent, Plaintiff suffered physical discomfort, emotional distress, embarrassment, humiliation, lost time, and consequential damages of no longer being allowed to live in the marital residence, not seeing his children, and losing his employment.

## VI.  UNLAWFUL RESTRAINT

70. Plaintiff incorporates Paragraphs 1-69 as if fully rewritten herein.

71. Defendants Krakora, Douglas, and Campbell, without privilege to do so, knowingly restrained Plaintiff of his liberty. Thus, Defendants Krakora, Douglas, and Campbell committed the criminal offense of unlawful restraint under ORC 2905.03(A).

72. As a direct and proximate result of the unlawful restraint committed by Defendants Krakora, Douglas, and Campbell, Plaintiff suffered physical discomfort, emotional distress,

embarrassment, humiliation, lost time, and consequential damages of no longer being allowed to live in the marital residence, not seeing his children, and losing his employment.

73. Plaintiff seeks civil relief under ORC 2307.60(A)(1).

## VII.    MALICIOUS PROSECUTION

74. Plaintiff incorporates Paragraphs 1-73 as if fully rewritten herein.

75. Defendant Christine Houtz acted with improper purpose and ill will by making false statements about Plaintiff to the 911 dispatcher and police that directly led to Plaintiff being arrested and charged with unlawful restraint without probable cause. She was motivated by having her boyfriend move in with her, create an opportunity to estrange and alienate her children from Plaintiff, and generate leverage in the domestic relations court so she could have firm custodial control over the children in the divorce proceedings.

76. Defendant Krakora acted with improper purpose by suggesting to Christine that she could prosecute for unlawful restraint and obtain a protection order against Plaintiff that would strip him of his ability to live in the marital residence and have contact with his children. Krakora continued to act with improper purpose by arresting Plaintiff and signing a probable cause affidavit instituting a prosecution for unlawful restraint that was in fact without probable cause.

77. As a direct and proximate result of being prosecuted, Plaintiff suffered physical discomfort, emotional distress, embarrassment, humiliation, lost time, and consequential damages of no longer being allowed to live in the marital residence, not seeing his children, and losing his employment.

## VIII.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

78. Plaintiff incorporates Paragraphs 1-77 as if fully rewritten herein.

79. Defendant Christine Houtz knew or should have known her actions of making false statements about Plaintiff to the 911 dispatcher and police that directly led to Plaintiff being arrested and charged would result in serious emotional distress to Plaintiff. She acted intentionally and/or with reckless disregard. Her conduct was extreme, and outrageous. As a proximate result of Christine's conduct, Plaintiff suffered serious emotional distress from not being allowed to live in the marital residence, not seeing his children, and losing his employment.

80. Defendant Krakora knew or should have known that his actions of suggesting to Christine to prosecute Plaintiff for unlawful restraint, albeit without probable cause, so she could obtain a protection order against Plaintiff would result in serious emotional distress to Plaintiff. He acted intentionally and/or with reckless disregard. His conduct was extreme, and outrageous. As a proximate result of Krakora's conduct, Plaintiff suffered serious emotional distress from not being allowed to live in the marital residence, not seeing his children, and losing his employment.

## IX. STATUTORY INDEMNIFICATION

81. Plaintiff incorporates Paragraphs 1-80 as if fully rewritten herein.

82. Under the Ohio state law indemnification provisions in ORC 2744.07(B), Defendant City of Shaker Heights is liable for any judgment obtained against Defendants Krakora, Douglas, Campbell, and Kerr.

18

## X.  JURY DEMAND

83. Plaintiff demands a trial by jury.

## XI. PRAYER FOR RELIEF

84. WHEREFORE, Plaintiff demands judgment against any or all Defendants, jointly and

severally, for the following:

    a.  Compensatory, actual, pain and suffering damages in an amount to be determined

       at trial;

    b.  Punitive damages in an amount to be determined at trial;

    c.  Reasonable attorney fees and expenses;

    d.  Additional relief in law and/or equity that the Court deems just and proper.

Respectfully submitted,

/s/ *Stephen P. Hanudel*
Stephen P. Hanudel (#0083486)
Attorney for Plaintiff
124 Middle Avenue, Suite 900
Elyria, Ohio 44035
Phone: (440) 328-8973
Fax: (440) 261-4040
sph812@gmail.com